THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN KOTECKI, Defendant-Appellant.—THE CITY OF NAPERVILLE, Plaintiff-Appellee, v. KEVIN KOTECKI, Defendant-Appellant.

Second District Nos. 2—95—0426, 2—95—0427 cons.

Opinion filed May 23, 1996.

John F. Donahue, of Donahue, Sowa & Bugos, of Lisle, for appellant.

Anthony M. Peccarelli, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Paul L. Stephanides, Assistant City Attorney, of Naperville, for appellee City of Naperville.

JUSTICE BOWMAN delivered the opinion of the court:

In these consolidated appeals, defendant, Kevin Kotecki, appeals his conviction of driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(1) (West 1994)) and the revocation of his supervision for an earlier DUI conviction prosecuted by the City of Naperville. We affirm.

On May 30, 1994, defendant was involved in a car accident in Naperville, Illinois. Following the accident, defendant was transported to Edward Hospital for medical treatment. Based on a result of "153" on a blood-alcohol concentration (BAC) test taken at the hospital, the State charged defendant with DUI, and the City of Naperville filed a petition to revoke defendant's supervision for an earlier DUI prosecuted by Naperville.

At trial, Todd Lawford testified that, on May 30, 1994, he was travelling westbound on Ogden Avenue when he observed a white Ford Mustang pass a stop sign without stopping. Lawford testified that the Mustang was travelling at a high rate of speed. The Mustang struck a maroon Ford Taurus station wagon. Lawford identified defendant as the driver of the Mustang, but stated that he would not be able to identify defendant outside the courtroom setting.

Steven Wilkins testified that, on May 30, 1994, he was travelling eastbound on Ogden Avenue and that his brother, Paul Wilkins, was travelling behind him. Steven Wilkins testified that, through his rearview mirror, he observed two cars collide, that defendant was the driver of one of the cars, and that Paul Wilkins was the driver of the other car.

Paul Wilkins testified that, on May 30, 1994, he was travelling eastbound on Ogden Avenue about two car lengths behind his brother, Steven Wilkins. Paul Wilkins stated that his vehicle was hit in the front right corner by defendant's vehicle.

Officer John Gaw of the Lisle police department testified that, on May 30, 1994, he arrived at the scene of the accident and observed two vehicles, a white Mustang and a maroon Ford Taurus station wagon. Officer Gaw further testified that there was foam around defendant's mouth and that he smelled a strong odor of alcohol on his breath. Officer Gaw testified that defendant was extricated from the vehicle and taken to the Edward Hospital emergency room. Officer Gaw stated that he did not ask the hospital staff to perform a BAC test on defendant.

Dr. Louis Montana testified that, on May 30, 1994, he was the trauma surgeon on call at Edward Hospital. Dr. Montana testified that he did not think he had ordered any specific tests and that he did not know whether any of the other emergency room physicians had ordered any specific tests. Dr. Montana testified that the figure "153" on the BAC test result did not change his diagnosis or his plan for emergency treatment.

Audrey Carey testified that she is the keeper of records at Edward Hospital. The parties stipulated that Carey's function is to keep, establish, and maintain hospital records. Carey testified that she recognized the State's exhibit "1D" as a lab sheet from Edward Hospital. Carey testified that the blood-alcohol result on the lab report was "153" and that this figure describes the amount of alcohol in the blood.

On August 1, 1994, defendant filed a motion *in limine* to prevent the State from introducing the results of his BAC test. The trial court denied defendant's motion and admitted the results pursuant to the version of section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1994)) in effect at the time of the trial.

After a bench trial, the trial court found defendant guilty of DUI. In support of this finding, the trial court stated that the gross number "153" appearing on defendant's BAC test result was the equivalent of "0.153" for the purpose of section 11—501(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11—501(a)(1) (West 1994)).

For the purposes of the revocation proceeding, defendant stipulated to the same facts relating to the May 30, 1994, arrest. The trial court then revoked defendant's supervision for the previous DUI prosecuted by the City of Naperville. Defendant filed a timely notice of appeal.

On appeal, defendant contends: (1) the application of the amended

statute, which allowed into evidence the results of defendant's BAC test, violates the *ex post facto* clauses of the United States and Illinois Constitutions (U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16); and (2) the trial court erred in determining the meaning of defendant's BAC test result.

Defendant's first contention on appeal is that the application of the amended version of section 11—501.4 of the Illinois Vehicle Code constituted the use of an *ex post facto* law. We disagree.

Section 11—501.4 now provides that a BAC test result is admissible in a DUI prosecution if ordered in the regular course of providing emergency medical treatment. 625 ILCS 5/11—501.4 (West 1994). This version of the statute was in effect at the time of defendant's trial. In contrast, under the statute in effect at the time of the accident, the test result would have been admissible only if it was ordered by a physician on duty at the hospital emergency room and was received and considered by the physician in order to assist him in diagnosis or treatment. 625 ILCS 5/11—501.4 (West 1992).

In the present case, defendant's BAC test was neither ordered by a physician on duty at the hospital emergency room nor received and considered by a physician in diagnosis or treatment. However, it was ordered in the regular course of providing emergency medical treatment. Therefore, the test was inadmissible under the version of the statute in effect at the time of the accident, but admissible under the version in effect at the time of the trial. Accordingly, we must determine which version of the statute was applicable at defendant's trial.

■ Article I, section 10, of the United States Constitution provides in relevant part that "[n]o State shall *** pass any *** ex post facto Law." U.S. Const., art. I, § 10. A law is *ex post facto* if it is both retroactive and disadvantageous to the defendant. *People v. Franklin*, 135 Ill. 2d 78, 107 (1990).

A law is retroactive if it applies to events which occurred before the law was enacted. *Tiller v. Klincar*, 138 Ill. 2d 1, 7 (1990). In the present case, the amendment was applied to admit the BAC test performed before the statute was amended. Therefore, the amendment was applied retroactively to defendant.

A law is disadvantageous to the defendant if it: (1) criminalizes an act that was innocent when done; (2) increases the punishment for a previously committed offense; or (3) alters the rules of evidence to make conviction easier. *Franklin*, 135 Ill. 2d at 107. The purpose of the prohibition against *ex post facto* laws is to provide persons with fair warning of the conduct which gives rise to criminal penalties, the degree of punishment for that conduct, and the legal rules of evidence to be applied at trial. *Franklin*, 135 Ill. 2d at 107.

■ However, the *ex post facto* clause does not limit the legislature's control of remedies or modes of procedure if they do not affect matters of substance. *People v. Felella*, 131 Ill. 2d 525, 537 (1989). Although an amendatory act is ordinarily applied prospectively only unless the statutory language clearly indicates otherwise, a firmly established exception to this rule is that an amendment which affects only procedural matters and not substantive rights is applied retroactively as well as prospectively. *People v. Fiorini*, 143 Ill. 2d 318, 333 (1991); *People v. Dorff*, 77 Ill. App. 3d 882, 887 (1979).

Defendant argues that the amendment in the present case disadvantages him because it alters the rules of evidence to make conviction easier. However, as the court in *Dorff* pointed out, the rule prohibiting the retroactive application of a law which alters the rules of evidence to make conviction easier refers to "substantive change[s] in the evidence needed to convict for the particular crime in question." *Dorff*, 77 Ill. App. 3d at 885.

*Dorff*, which neither party to this appeal has cited, presents a situation similar to the present case. There, the defendant was convicted by a jury of rape and aggravated battery. Prior to trial, the State moved to preclude the defendant from introducing evidence regarding the complainant's prior sexual activity, citing Illinois' newly enacted "rape shield" law (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 115—7). Section 115—7 became effective on January 4, 1978, after the date of the offense, but before the defendant's trial. See *Dorff*, 77 Ill. App. 3d at 883-84.

On appeal, the *Dorff* court rejected the defendant's argument that the application of section 115—7 to his trial violated the *ex post facto* provisions of the United States and Illinois Constitutions. After reciting the general rules pertaining to *ex post facto* laws, the court stated that the application of statutory changes in the mode of trial or the rules of evidence does not violate the rule against *ex post facto* laws. The court then held that a statute, such as section 115—7, which renders inadmissible evidence which would have been admissible at the time the offense occurred is not an *ex post facto* law. The court noted that section 115—7 neither criminalized an act which was legal when performed nor increased the punishment in effect when the offense occurred. The court concluded "[t]he statute left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible." *Dorff*, 77 Ill. App. 3d at 887.

■ Admittedly, the facts in *Dorff* are not identical to those in the present case. *Dorff* involved a statute which made inadmissible evidence which was admissible at the time of the offense. In the present

case, the converse situation exists: the statute at issue rendered admissible evidence which was inadmissible at the time of the alleged offense. We further recognize that the evidence at issue in *Dorff* was not substantive evidence of the defendant's guilt and, instead, related only to the complainant's credibility. However, *Dorff*'s holding, that the admissibility of evidence is determined based on the law existing at the time of the trial, rather than at the time of the offense, applies equally to the present case. Moreover, this holding is consistent with the general rule that statutory amendments affecting the admissibility of evidence "relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure." *Hopt v. Utah*, 110 U.S. 574, 590, 28 L. Ed. 262, 269, 4 S. Ct. 202, 210 (1884); accord *People v. Edwards*, 224 Ill. App. 3d 1017, 1024 (1992) (where statute at issue concerns trial procedures rather than substantive matters, court should apply version of statute which existed at time of trial rather than version which existed at time of offense); *People v. Priola*, 203 Ill. App. 3d 401, 417-18 (1990) (no violation of *ex post facto* clauses where trial court applied version of hearsay statute which existed at time of trial rather than version which existed at time of offense).

In support of its holding, *Dorff* cited *Thompson v. Missouri*, 171 U.S. 380, 43 L. Ed. 204, 18 S. Ct. 922 (1898), a case where, as here, the legislature enacted a statute allowing the admission of evidence which would not have been admissible at the time the alleged crime occurred. *Thompson*, 171 U.S. at 387, 43 L. Ed. at 207-08, 18 S. Ct. at 924-25. In *Thompson*, the defendant was convicted of murder in a Missouri court. The trial court admitted certain letters written by the defendant. Under Missouri law as it existed at the time of the alleged offense, the letters would have been inadmissible; however, a change in the law enacted by the legislature prior to the trial rendered them admissible. On appeal to the United States Supreme Court, the defendant argued that the admission of these letters violated the constitutional prohibition against *ex post facto* laws. See *Thompson*, 171 U.S. at 381-82, 43 L. Ed. at 205-06, 18 S. Ct. at 922.

The Supreme Court rejected this argument and held that the amendment did not constitute an *ex post facto* law. The Court stated:

> "[W]e cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed."

*Thompson*, 171 U.S. at 387, 43 L. Ed. at 207, 18 S. Ct. at 924.

■ In the present case, we adhere to the holdings in *Thompson* and *Dorff*. The amendment at issue neither enlarged the punishment, nor criminalized conduct which was legal when committed, nor changed the quality or degree of the offense. Moreover, it did not alter the law so as to require less proof, in amount or degree, to convict. Accordingly, we conclude that the amendment did not affect any substantial right of defendant and, instead, affected only matters of procedure. See *People v. Hart*, 214 Ill. App. 3d 512, 519 (1991) (statutory amendment which merely removes existing restrictions on admissibility of evidence relates to matters of procedure only and may be applied retroactively); see also *Thompson*, 171 U.S. at 387, 43 L. Ed. at 207-08, 18 S. Ct. at 924-25; *Dorff*, 77 Ill. App. 3d at 886-87. Because the amendment affected only matters of procedure, the trial court correctly applied the amendment retroactively to defendant. *Fiorini*, 143 Ill. 2d at 333.

■ Defendant's second contention is that there was an insufficient foundation for the trial court to determine the meaning of defendant's BAC test result. We disagree.

The test result which was admitted into evidence states the ETOH, or blood-alcohol level, as "153." Under the heading "UNITS," the result states "MG/DL." The trial court construed this information as 153 milligrams per deciliter, stating:

"In my opinion, the document indicates one, five three milligrams per deciliter[ ], which we construe, commonly, as lay people, as a .153 blood alcohol level, which is equal to or greater than .10, which is the standard for the statute. Based on that, I enter a finding of guilty as to count three, the charge, operating with a .10 or greater."

Section 11—501.2(a)(5) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(a)(5) (West 1994)) states that alcohol concentration means grams of alcohol per 100 milliliters of blood. If 153 milligrams per deciliter is converted to the statutory form, it may be stated as 0.153 grams per 100 milliliters.

The trial court did not, as defendant argues, arbitrarily insert a decimal point in the test result based on "personal extrapolation and feeling." Rather, the trial court examined the document in evidence and made a reasonable inference from that document. See *People v. McDonald*, 168 Ill. 2d 420, 449 (1995) (trier of fact is permitted to draw reasonable inferences from the evidence). We hold that the trial court properly used the information provided on the BAC test result and the statute to determine the meaning of the gross number "153" in the BAC test result.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and THOMAS, JJ., concur.