# Illinois Official Reports

## Appellate Court

---

### *People v. Moffett*, 2019 IL App (2d) 180964

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. YOLANDA MOFFETT, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-18-0964 |
| Filed | December 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 18-CF-1382; the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Joseph McMahon, State's Attorney, of St. Charles (Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, Thomas A. Lilien, and Sade V. Edwards, of State Appellate Defender's Office, of Elgin, for appellee. |
| Panel | PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Zenoff and Hudson concurred in the judgment and opinion. |

¶ 1    In this prosecution of defendant, Yolanda Moffett, for aggravated battery of a correctional institution employee, the State appeals two orders of the circuit court of Kane County. The first is an order dismissing, on speedy-trial grounds, count II of the State's August 22, 2018, indictment. The second is an order granting in part defendant's motion *in limine* to exclude video evidence of the alleged battery. For the following reasons, we reverse both the dismissal of count II and the partial grant of defendant's motion *in limine*.

¶ 2                                    I. BACKGROUND
¶ 3                                    A. Speedy Trial
¶ 4    For purposes of the speedy-trial issue, we note that defendant was in custody continuously from July 7, 2018—when the complaint was filed—to November 6, 2019—when defendant filed her successful motion to dismiss on speedy-trial grounds.

¶ 5    On July 7, 2018, defendant was charged by complaint with one count of aggravated battery of Officer Davis, a correctional institution employee. See 720 ILCS 5/12-3(a)(1), 12-3.05(d)(4) (West 2018). The complaint alleged that, on or about July 5, 2018, defendant "knowingly caused bodily harm to [Davis] *** in that she bit [Davis's] fingers on her right hand, knowing said victim to be a correctional officer, while performing her official duties."

¶ 6    During defendant's first appearance on the charge, on July 13, 2018, she stated that she wished to hire an attorney and needed immediate assistance in reading documents. The trial court appointed the public defender for the limited purpose of helping defendant understand her legal situation. The court continued the matter to July 20 for the setting of a preliminary hearing. The court's order of July 13 states that the continuance was by agreement of the defense.

¶ 7    Meanwhile, on July 19, 2018, defendant—by the public defender—filed a demand for a speedy trial. At the status hearing on July 20, the court appointed the public defender in full. Defense counsel asked that the court "continue the matter by agreement" for counsel to review additional discovery provided by the State. The court continued the matter to August 8 for the setting of a preliminary hearing. The court's order of July 20 states that the continuance was by agreement of the defense.

¶ 8    At the August 8, 2018, status hearing, defendant stated that she was asserting her speedy-trial rights and wanted the case set for trial. The court set the matter for a pretrial conference on September 13 and for trial on September 17. The court then continued the matter to August 24 for a preliminary hearing. The court's order of August 8 states that "[d]efendant demands a speedy trial and objects to further continuances."

¶ 9    On August 22, 2018, the State filed an indictment setting forth two counts of aggravated battery that allegedly occurred on or about July 5. Count I alleged that defendant "knowingly caused bodily harm to Officer Davis, in that said defendant bit Officer Davis on or about the body and/or hands, knowing said victim to be a correctional officer performing her official duties." See *id.* §§ 12-3(a)(1), 12-3.05(d)(4). Count II alleged that defendant "knowingly made physical contact of an insulting or provoking nature with Officer Davis, in that said defendant bit Officer Davis on or about the body and/or hands, knowing said victim to be a correctional officer performing her official duties." See *id.* §§ 12-3(a)(2), 12-3.05(d)(4).

¶ 10    Defendant was arraigned on the indictment on August 24, 2018. The court remarked to defendant that count II was "exactly the same" as count I and was "just a different way of charging it." Defendant pled not guilty to both charges.

¶ 11    The trial court subsequently granted the State two continuances of the trial date. The first was from September 17 to October 22, and the second was from October 22 to November 13. Defendant objected to both continuances.

¶ 12    On November 6, 2018, defendant filed a motion to dismiss count II of the indictment because she had not been tried on that charge within the statutory 120-day period for defendants in custody. See 725 ILCS 5/103-5(a) (West 2018) ("Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***."). Defendant asserted in her motion that, because count II was a "new and additional charge" (*People v. Staake*, 2017 IL 121755, ¶ 37), delays occasioned by defendant on the initial charge (filed in the complaint, on July 7, 2018) were not attributable to her on count II. According to defendant, when those delays were excluded, November 6 became day 121 of the statutory period, and therefore her speedy-trial rights were violated with respect to count II.

¶ 13    At the hearing on the motion to dismiss, defendant observed that battery as charged in count II of the indictment had a different element than battery as charged in the original complaint. Specifically, the original count required proof that defendant "cause[d] bodily harm" (720 ILCS 5/12-3(a)(1) (West 2018)), while count II required proof of "physical contact of an insulting or provoking nature" (*id.* § 12-3(a)(2)). The trial court agreed that this was the decisive difference that rendered count II a new and additional charge. The court recognized that the State cited cases that "discuss a notice issue." See *People v. Phipps*, 238 Ill. 2d 54, 67 (2010) (in determining whether subsequent charges are new and additional, "[t]he focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges"). The court said that it was "not following the notice cases" because "[n]othing in the statute speaks to notice, nothing in the statute refers to timing in any way." The court believed, rather, that the "actual purpose" of the speedy-trial rule was to "avoid piecemeal prosecutions," such as the State was attempting in this case. Therefore, the court dismissed count II.

¶ 14    The State filed a motion to reconsider. The court denied the motion, adhering to its position that count II was a new and additional charge because of "the different types of mental states and different types of activity that *** would have to be proven."

¶ 15                              B. Motion *in Limine*

¶ 16    Defendant filed a motion *in limine* concerning an eight-minute video that the State intended to introduce as evidence that defendant bit Davis. Defendant sought exclusion of all statements on the video as irrelevant or as inadmissible hearsay.

¶ 17    At the hearing on the motion, the State played the video for the court. The video shows several correctional officers, none of whom is identified in the footage itself. However, in presenting their arguments on the motion, the parties appeared to agree on the identities of two officers, Conklin and Davis. The footage begins with Conklin entering the jail cell where defendant is seated in a restraint chair with her back to the door. Conklin states that defendant has been in "the chair" for over four hours and has refused to cooperate. Conklin then tells defendant that he and female officers will remove defendant's clothing and place her in a

- 3 -

"suicide smock." At this point, several female officers, including Davis, enter the cell. As Conklin begins to cut away defendant's shirt, she turns her head toward his hands. The female officers react by attempting to restrain defendant's head, and in the process, Davis exclaims "Ow!" and jerks her hand away from defendant's face. Conklin immediately asks, "Did she bite you?" Davis immediately answers, "Yes!" (The exclamation point is appropriate because Davis answers sharply; she is obviously angry, frustrated, and/or in pain.) The officers continue to cut away defendant's clothing. When her clothing is removed, the officers place the suicide smock on defendant, remove her from the restraint chair, and lay her on the floor of the cell. The footage then stops. Throughout the video, there are other remarks by the correctional officers and by defendant herself.

¶ 18    Defendant argued at the motion hearing that all statements on the video were inadmissible. The State claimed in response that both Davis's exclamation, "Ow," and her subsequent answer to Conklin were excited utterances. See Ill. R. Evid. 803(2) (eff. Sept. 28, 2018). The State also proposed that Davis's answer was admissible as a statement of identification.

¶ 19    The trial court ruled that none of the audio from the video was admissible except for Conklin's initial remarks to defendant and Davis's exclamation, "Ow!" The court agreed with the State that "Ow!" was admissible as an excited utterance; however, her answer to Conklin fell under the general bar against prior consistent statements. See Ill. R. Evid. 613(c) (eff. Oct. 15, 2015).

¶ 20    The court gave additional reasons for excluding Davis's answer to Conklin. First, the answer was not a statement of identification, as there was "really no identification issue" in the case. Second, although the answer was indeed an excited utterance, it was "more prejudicial than probative":

> "I understand the law on this is that you can ask questions and it still [can] be an excited utterance. I get all that, but *** my problem with this is there is a question asked and the question and answer put together really resolves all the factual issues. I mean, many of the factual issues in this case. It's too pointed."

The court added that the answer was also "cumulative."

¶ 21    The State filed a motion to reconsider, proposing the additional theory that Davis's answer to Conklin was admissible as a statement of Davis's then-existing mental, emotional, or physical condition. See Ill. R. Evid. 803(3) (eff. Sept. 28, 2018). The court reaffirmed that Davis's answer was a prior consistent statement and, therefore, inadmissible. The court denied the motion to reconsider.

¶ 22    The State filed a certificate of impairment and a notice of appeal.

¶ 23                                II. ANALYSIS
¶ 24                                A. Speedy Trial
¶ 25    The State contends that, when defendant filed her motion to dismiss count II, the speedy-trial term had not yet run on that charge, given the delay to which defendant agreed on the original count of battery. According to the State, the trial court erred by deeming count II a "new and additional charge" (*Staake*, 2017 IL 121755, ¶ 37) and thus refusing to apply to count

II the agreed delay on the original charge.[1] We agree with the State that count II was not a new and additional charge and that there was no speedy-trial violation on that charge.

¶ 26       The speedy-trial rule provides in relevant part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2018).

"Any period of delay found to be occasioned by the defendant tolls the applicable statutory period." *People v. Hall*, 194 Ill. 2d 305, 327 (2000). A defendant not tried within the statutory period is entitled to release from custody and dismissal of the charges. *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006).

¶ 27       If defendant had been brought into custody initially on the aggravated battery charge, the speedy-trial period would have run from the date she was taken in custody. See 725 ILCS 5/103-5(a) (West 2018). Here, however, defendant was already in custody when she was charged with aggravated battery. The parties and the trial court all agreed below that the speedy-trial period began on July 7, 2018, when the original battery charge was filed. On August 22, 2018, 46 days after July 7, the State filed the two-count indictment. Defendant had not been tried as of the filing of her motion to dismiss on November 6, 2018—121 days after July 7, 2018. Defendant agreed to two continuances, from July 13 to July 20 and from July 20 to August 8, before the indictment was filed. There is no question that those continuances applied to the original charge. The issue on appeal is whether those continuances also applied to count II of the indictment. If they did not, then defendant's speedy-trial rights were violated with respect to that count.

¶ 28       We turn, then, to the criteria that determine whether a delay attributable to a defendant on an original charge is also attributable to the defendant on a subsequent charge. The supreme court has adopted standards from the appellate court decision in *People v. Williams*, 94 Ill. App. 3d 241 (1981). See *People v. Quigley*, 183 Ill. 2d 1, 13 (1998) (citing *Williams*, 94 Ill. App. 3d at 248-49). The so-called "*Williams* rule" states:

> "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." *Williams*, 94 Ill. App. 3d at 248-49.

¶ 29       The question of whether a subsequent charge is a new and additional charge is intertwined with the question of whether the original and subsequent charges were subject to compulsory joinder. The supreme court has "clarified that [the *Williams* rule] applies only when the original and subsequent charges are subject to compulsory joinder." *People v. Hunter*, 2013 IL 114100, ¶ 10. Thus, "[i]f the initial and subsequent charges filed against the defendant are subject to

---

[1]Defendant has raised no speedy-trial issue with respect to count I of the indictment.

compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges." *People v. Williams*, 204 Ill. 2d 191, 207 (2003). Section 3-3 of the Criminal Code of 2012 (Code) (720 ILCS 5/3-3 (West 2018)) sets forth the criteria for determining when joinder is compulsory:

> "(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

> (b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act."[2]

¶ 30    The supreme court has clarified that a speedy-trial/compulsory-joinder analysis must have regard for "[t]he purpose of the rule set forth in *Williams*," which is "to prevent 'trial by ambush.' " *Phipps*, 238 Ill. 2d at 67 (quoting *Williams*, 204 Ill. 2d at 207). The supreme court has elaborated on that purpose:

> "Without [the *Williams*] rule:

>> '[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. *** When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial.' [Citation.]

>> The rationale for the [*Williams*] rule, therefore, centers on whether the defendant had adequate notice of the subsequent charges to allow preparation of a defense. The focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges. If the original charging instrument gives a defendant adequate notice of the subsequent charges, the ability to prepare for trial on those charges is not hindered in any way. Thus, when the State files the subsequent charge, the defendant will not face 'a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial.' [Citation.] Rather, the defendant may proceed to trial on the subsequent charges with adequate preparation instead of being forced to agree to further delay. In those circumstances, the rationale for declining to attribute to the defendant delays in connection with the original charges does not apply." *Id.* at 67-68.

We review *de novo* the question of whether a subsequent charge is considered a "new and additional charge" under the *Williams* rule. *Staake*, 2017 IL 121755, ¶ 37.

¶ 31    Our analysis "involves a comparison of the original and subsequent charges." *Phipps*, 238 Ill. 2d at 67. Defendant's speedy-trial objection, as articulated on appeal, is based on the different elements of battery as alleged in the original and subsequent charges.[3] She argues:

---

[2]The State does not argue that the complaint here did not "commence the prosecution," even though "[a]ll prosecutions of felonies shall be by information or indictment." 725 ILCS 5/111-2(a) (West 2018).

[3]Notably, defendant makes no issue of the differing degrees of factual specificity between the original and subsequent charges. The original charge alleged that defendant bit "[Davis's] fingers on

"For Count 2, unlike the charge alleged in the original complaint, the State is not required to prove beyond a reasonable doubt that Officer Davis suffered bodily harm, but only that [defendant] made non-consensual contact with [Davis] that was insulting or provoking. [Citation.] Because the subsequent charge of aggravated battery raised a different theory and type of aggravated battery altogether, the charges require the State to prove different elements and require the fact-finder to make different findings in rendering its verdict."

¶ 32    To address defendant's specific concern, we examine cases that illustrate how courts treat variances between the elements in original and subsequent charges. Before doing so, we distinguish *People v. Peters*, 2018 IL App (2d) 150650, one of the State's main authorities. In *Peters*, the original and subsequent counts at issue charged the defendant with attempted murder for shooting at several sheriff's deputies. The subsequent counts differed only in that they specified where on her body one of the deputies received gunshot wounds from the defendant. *Id.* ¶ 12. This court found that these later counts were not new and additional charges, in part because the charges "did not *** add any elements." *Id.* ¶ 80. Here, by contrast, the State added an element by charging defendant with battery based on contact of an insulting or provoking nature in addition to the original charge of battery based on bodily harm. See 720 ILCS 5/12-3(a) (West 2018) ("A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."). As we demonstrate, however, this additional element did not render count II a new and additional charge.

¶ 33    We examine *Phipps* and *People v. Whitlock*, 2018 IL App (1st) 152978. The defendant in *Phipps* was initially indicted on a charge of reckless homicide (720 ILCS 5/9-3(a) (West 2002)). The indictment alleged that the defendant,

" 'while under the influence of alcohol, while acting in a reckless manner, and without lawful justification, performed acts likely to cause death or great bodily harm to another in that he drove a motor vehicle upon a public highway *** in a manner that was not proper with regard to the safety of others on the roadway, in that he drove at a high rate of speed ***, failed to stop for the red light at [an] intersection, and hit a car being driven by Malocka Gille, who was proceeding lawfully through the intersection, thereby causing the death of Malocka Gille, in violation of 720 ILCS 5/9-3(a).' " *Phipps*, 238 Ill. 2d at 57.

¶ 34    The defendant pled guilty, but prior to his sentencing the State moved to vacate the plea because the Illinois legislature had found the reckless homicide statute to be void. The court vacated the plea, and the State subsequently charged the defendant by information with aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a) (West 2002)). The information alleged that the defendant

" 'drove a motor vehicle within this state while under the influence of alcohol, in violation of 625 ILCS 5/11-501(a)(2), was involved in a motor vehicle accident upon a public highway *** with a motor vehicle being driven by Malocka Gille, said motor vehicle accident causing the death of Malocka Gille, and said violation was the

---

her right hand," while the subsequent charge (count II) alleged, more broadly, that defendant bit Davis "on or about [her] body and/or hands."

proximate cause of the death of Malocka Gille, in violation of 625 ILCS 5/11-501(d)(1)(F).' " *Phipps*, 238 Ill. 2d at 58.

¶ 35 In analyzing whether the charge of aggravated DUI was a new and additional charge for speedy-trial purposes, the trial court first compared the factual allegations in that charge with the allegations in the original charge of reckless homicide. The court found that "the original indictment and subsequent information alleged the same conduct." *Id.* at 68. Specifically,

> "[t]he original indictment charged, in pertinent part, that defendant drove a motor vehicle while under the influence of alcohol and collided with a car driven by Malocka Gille, causing her death. Similarly, the subsequent information alleged defendant drove a motor vehicle while under the influence of alcohol and was involved in a collision with a car driven by Malocka Gille, causing her death. The original indictment provided defendant notice of the material allegations in the subsequent information." *Id.*

¶ 36 The court further noted that "the reckless homicide and aggravated driving under the influence offenses, as charged by the State, had essentially the same elements and provided the same penalty." *Id.* A person committed reckless homicide if he or she caused the death of another by driving a motor vehicle recklessly in a manner likely to cause death or great bodily harm. *Id.* (citing 720 ILCS 5/9-3(a) (West 2002)). If the defendant committed the offense while under the influence of alcohol, the offense was a Class 2 felony punishable by 3 to 14 years in prison. *Id.* (citing 720 ILCS 5/9-3(e) (West 2002)). By comparison, a person committed aggravated DUI by causing the death of another person as a result of driving under the influence, and this offense had the same classification and range of punishment as reckless homicide. *Id.* at 68-69 (citing 625 ILCS 5/11-501(a), (d)(1)(F), (d)(2) (West 2004)).

¶ 37 After comparing the original and subsequent charges, the supreme court concluded that "the original indictment gave defendant notice of the subsequent charge from the outset of the prosecution." *Id.* at 69-70. Consequently, the aggravated DUI charge was not a new and additional charge. *Id.* at 70.

¶ 38 The defendant in *Whitlock* was arrested after he fled from police in his minivan. During the pursuit, the defendant rammed a police car and also collided at high speed with a civilian vehicle, killing the driver, Valerie Davis. The State's initial indictment charged the defendant with three counts of felony murder (Davis), three counts of attempted first degree murder of a peace officer, eight counts of aggravated battery, six counts of aggravated fleeing, and two counts of criminal damage to government property. The State's subsequent indictment amended the felony murder charge to knowing first degree murder and also added two counts of reckless homicide. *Whitlock*, 2018 IL App (1st) 152978, ¶¶ 1, 7. The defendant moved to dismiss the knowing murder and reckless homicide charges on speedy-trial grounds. The trial court denied the motion because the charges were not new and additional charges. *Id.* ¶ 8.

¶ 39 The appellate court affirmed. First, as to the charge of knowing murder, the court relied on case law holding that the first degree murder statute (720 ILCS 5/9-1 (West 2016)) sets forth a single offense that can be committed in different ways. *Whitlock*, 2018 IL App (1st) 152978, ¶ 41 (citing *People v. Smith*, 233 Ill. 2d 1, 16 (2009); *People v. Maxwell*, 148 Ill. 2d 116, 137 (1992)). Quoting *Maxwell*, the court stated that " '[j]ust as the method of committing murder is not integral to the offense and therefore need not be specified in the charging instrument [citation], *** the precise statutory theory of the offense of murder is not a matter that must be specifically alleged.' " *Id.* (quoting *Maxwell*, 148 Ill. 2d at 137). The court concluded, based on *Smith* and *Maxwell*, that "[t]he change in murder theory between the two indictments is of

- 8 -

no consequence because the original indictment placed [the defendant] on notice that he could be tried for murder under any of the three murder theories recognized in Illinois." *Id.* ¶ 42. Therefore, the charge of knowing murder was not a new and additional charge. See *id.*

¶ 40    The *Whitlock* court also held that the charge of reckless homicide (720 ILCS 5/9-3(e-7)(2) (West 2016)) was not a new and additional charge. *Whitlock*, 2018 IL App (1st) 152978, ¶ 44. The court could not rely on *Smith* and *Maxwell* because first degree murder and reckless homicide were separate offenses. Instead, the court relied on a comparison of the factual allegations underlying the original and subsequent indictments:

> "[T]he 2009 indictment put defendant on notice that he would have to defend himself against 'the chain of events that caused the death of Valerie Davis.' The 'chain of events' broadly referred to defendant's use of the minivan on November 3, 2009, which crashed into and killed Davis. More specifically, the original indictment put defendant on notice that the State intended to hold him accountable for the death [of] Davis and he should prepare his defense related to his conduct in driving and hitting her. We *** note that defendant was also charged with aggravated fleeing or attempting to elude a police officer based on his conduct in driving the minivan. This also gave him notice of what he would have to defend against." *Id.*

¶ 41    *Phipps* and *Whitlock* illustrate that not all variances in the elements between original and subsequent charges will render the latter new and additional charges. In *Phipps*, charging aggravated DUI in place of reckless homicide had the effect of eliminating an element—that the defendant drove recklessly—and thus lightened the State's burden. Compare 720 ILCS 5/9-3(a) (West 2002) (reckless homicide), with 625 ILCS 5/11-501(a), (d)(1)(F) (West 2002) (aggravated DUI). Still, the supreme court found that the offenses "had essentially the same elements" and that, because the original and subsequent charges "alleged the same conduct" of driving under the influence and killing the victim in a collision, the subsequent charge was not a new and additional charge. *Phipps*, 238 Ill. 2d at 68.

¶ 42    In *Whitlock*, the change from felony murder to knowing murder was permissible because the State did not need to particularize the theory of murder under which it was proceeding. *Whitlock*, 2018 IL App (1st) 152978, ¶ 41. The court's analysis was different for reckless homicide, which had a different mental state from that for murder. See *People v. Eubanks*, 2017 IL App (1st) 142837, ¶ 34 ("The primary distinction between first degree murder and reckless homicide is the mental state of the defendant."). Despite the difference in the elements, the court held that the added charge of reckless homicide was not a new and additional charge because "the original indictment put defendant on notice that the State intended to hold him accountable for the death [of] Davis and he should prepare his defense related to his conduct in driving and hitting her." *Whitlock*, 2018 IL App (1st) 152978, ¶ 44.

¶ 43    In this case, the two charges we compare are the single count in the July 2018 complaint (aggravated battery: bodily harm) and count II of the August 2018 indictment (aggravated battery: insulting or provoking contact). Aggravated battery (720 ILCS 5/12-3.05 (West 2018)) is predicated on battery, and section 12-3(a) of the Code (*id.* § 12-3(a)) defines battery: "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." As defendant emphasizes, these subsections have distinct proof requirements. "Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the [battery] statute, some sort of physical pain or damage to

the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). "Otherwise there would be no need for the other type of battery, contact of an insulting or provoking nature." *Id.* While conduct need not cause bodily harm in order to be insulting or provoking (*People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009)), imagination strains to conjure a scenario in which the deliberate infliction of bodily harm is not insulting or provoking. In comparing the charges in this case, our "focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges." *Phipps*, 238 Ill. 2d at 67. The original aggravated battery charge alleged that defendant knowingly caused bodily harm to Davis by biting her. Defendant was thus placed "on notice that the State intended to hold [defendant] accountable" (*Whitlock*, 2018 IL App (1st) 152978, ¶ 44) for biting Davis. Defendant should have anticipated that the State, having charged that defendant's conduct caused bodily harm, would in time also charge that it was insulting or provoking. This is especially true given the type of act alleged. Biting is, by our societal standards, particularly distasteful given its invasive nature and attendant risk of contamination and infection.

¶ 44        Also factoring into our application of the *Williams* rule is that the aggravated battery charged in count II of the indictment had the same classification and carried the same penalty as the aggravated battery charged in the original complaint. See 720 ILCS 5/12-3.05(h) (West 2018).

¶ 45        Defendant relies on several authorities, but none of them are relevantly similar to this case. We begin with *People v. McBrien*, 144 Ill. App. 3d 489 (1986), and *People v. Veile*, 109 Ill. App. 3d 847 (1982). In *Veile*, the defendant was charged with aggravated battery for causing bodily harm to a peace officer. A jury convicted him, but the appellate court reversed, holding that the evidence at trial did not establish bodily harm. The State suggested, as an alternative ground for affirmance, that the defendant's contact with the officer was at least insulting or provoking. The court rejected the State's proposal:

> "[T]he State must either elect which type of battery to charge, or to charge in the alternative if it is unsure of its evidence. In the instant case there was no suggestion of an insulting or provoking touching. The information *** clearly charges battery by bodily harm, and the definition of battery contained in the instructions to the jury is limited to bodily harm, as is the issues instruction." *Id.* at 850.

The court remarked that a defendant "has a right to know specifically what she is being charged with." *Id.* at 851.

¶ 46        *McBrien* had these similarities to *Veile*: (1) the defendant was convicted of aggravated battery for causing bodily harm to a peace officer, (2) the appellate court found inadequate proof of bodily harm, and (3) the appellate court declined to consider whether the defendant's contact with the peace officer was at least insulting or provoking. The *McBrien* court said:

> "Count I specifically alleged that defendant 'caused bodily harm' to Chief Grabruck. While this matter would be more easily settled if the second form of battery had been charged, the fact remains there are no allegations suggesting physical contact of an insulting or provoking nature. Thus, our inquiry is necessarily limited to the 'bodily harm' prong of battery." *McBrien*, 144 Ill. App. 3d at 496.

¶ 47        In both *McBrien* and *Veile*, the question was whether a battery conviction based on the charged subsection of the battery statute (bodily harm) could be affirmed on appeal based on proof relating to the subsection that was not charged (insulting/provoking contact). The courts

answered in the negative, but defendant misunderstands the full grounds for those answers. The fact that section 12-3(a) set forth two distinct forms of battery was not reason enough; also operative in the courts' analysis was the principle that a defendant "has a right to know specifically what she is being charged with" prior to trial (*Veile*, 109 Ill. App. 3d at 851). By contrast, the issue here is not whether defendant had adequate notice of his battery charges prior to trial but whether the original battery charge gave him adequate notice of the subsequent battery charge. This procedural difference sets *McBrien* and *Veile* apart from this case.

¶ 48 Defendant also cites *Hunter*, where the supreme court held that, upon the filing of a speedy-trial demand, the speedy-trial period begins to run both for the filed charges *and* for any charges subject to compulsory joinder. *Hunter*, 2013 IL 114100, ¶ 10. The State in *Hunter* initially charged the defendant with drug possession. The defendant, who was released on bail, filed a demand for trial. See 725 ILCS 5/103-5(b) (West 2008) (a defendant released on bail must be brought to trial within 160 days from the date the defendant demands trial). One hundred seventy-five days after the defendant filed his demand for trial, the State brought gun-related charges. On the defendant's motion, the trial court dismissed the new charges because they were not brought within the speedy-trial period. *Hunter*, 2013 IL 114100, ¶¶ 4-7. The supreme court affirmed, holding that, because the gun-related charges were subject to compulsory joinder, the State was required to bring them within 160 days of the defendant's trial demand. *Id.* ¶ 27.

¶ 49 *Hunter* is distinguishable. The parties here agree that the speedy-trial term began on July 7, 2018, when the complaint was filed. The August 22 indictment was brought within 120 days of July 7. Therefore, the rule applied in *Hunter* is not involved here. The issue, rather, is whether the speedy-trial term applicable to count II of the indictment had expired by the time defendant filed her motion to dismiss.

¶ 50 We hold that count II of the indictment was not a new and additional charge under the *Williams* rule. Therefore, the continuances attributable to defendant on the original battery charge were also attributable to her on the subsequent charge, and the State did not violate defendant's speedy-trial rights with respect to count II.

¶ 51                                  B. Motion *in Limine*

¶ 52 Before proceeding to our analysis, we grant the State's motion to cite, as additional authority, *People v. Georgakapoulos*, 303 Ill. App. 3d 1001 (1999).

¶ 53 The State challenges the trial court's ruling on defendant's motion *in limine* to exclude the audio on the video of the correctional officers placing defendant in a suicide smock. The court admitted Davis's exclamation, "Ow!," as an excited utterance. The court excluded, however, Conklin's question to Davis, "Did she bite you?" and Davis's reply, "Yes!" The court ruled that Davis's answer to Conklin was a prior consistent statement and, hence, was barred under the version of Illinois Rule of Evidence 613(c) (eff. Oct. 15, 2015) then in effect. The court held in the alternative that Davis's answer qualified as an excited utterance but was nonetheless inadmissible because its prejudicial effect outweighed its probative value. We agree with the State that Davis's answer was admissible, but we base our ruling not on the version of Rule 613(c) in effect when the trial court made its ruling, but on an amendment that went into effect while this appeal was pending.

¶ 54 We interpret a supreme court rule using the same principles that guide statutory construction. *People v. Dominguez*, 2012 IL 111336, ¶ 16. Our primary goal is to ascertain the

intent of the drafters, the clearest indication of which is the language of the rule itself when given its plain and ordinary meaning. *Id.*

¶ 55    The version of Rule 613 in effect when the trial court ruled on the motion *in limine* stated as follows:

> "(a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
>
> (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is first afforded an opportunity to explain or deny the same and the opposing party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to statements of a party-opponent as defined in Rule 801(d)(2).
>
> (c) Evidence of Prior Consistent Statement of Witness. A prior statement that is consistent with the declarant-witness's testimony is admissible, for rehabilitation purposes only and not substantively as a hearsay exception or exclusion, when the declarant testifies at the trial or hearing and is available to the opposing party for examination concerning the statement, and the statement is offered to rebut an express or implied charge that:
>
> > (i) the witness acted from an improper influence or motive to testify falsely, if that influence or motive did not exist when the statement was made; or
> >
> > (ii) the witness's testimony was recently fabricated, if the statement was made before the alleged fabrication occurred." Ill. R. Evid. 613 (eff. Oct. 15, 2015).

Subparagraph (c) was not part of Rule 613 when the rule first took effect on January 1, 2011, but was added in October 2015.

¶ 56    Subparagraph (c) was amended most recently on September 17, 2019, while this appeal was pending. As amended, subparagraph (c) reads:

> "(c) Evidence of Prior Consistent Statement of Witness. Except for a hearsay statement otherwise admissible under evidence rules, a prior statement that is consistent with the declarant-witness's testimony is admissible, for rehabilitation purposes only and not substantively as a hearsay exception or exclusion, when the declarant testifies at the trial or hearing and is available to the opposing party for examination concerning the statement, and the statement is offered to rebut an express or implied charge [of improper motive or recent fabrication]." Ill. R. Evid. 613(c) (eff. Sept. 17, 2019).

¶ 57    We apply this latest amendment to the issue on appeal. The impetus for our doing so is the principle that a ruling on a motion *in limine* is an interlocutory order that is subject to reconsideration by the trial court at any time prior to or during trial. *People v. Bennett*, 329 Ill. App. 3d 502, 515 (2002).

¶ 58    We stress that applying the latest amendment to Rule 613(c) does not violate defendant's right against the imposition of *ex post facto* laws (see U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16). An *ex post facto* law is one that is both retroactive *and* disadvantageous to the defendant. *People v. Kotecki*, 279 Ill. App. 3d 1006, 1010 (1996). A law is disadvantageous to the defendant if it (1) criminalizes an act that was innocent when done, (2) increases the

punishment for a previously committed offense, or (3) alters the rules of evidence to make a conviction easier to obtain. *Id.* The *ex post facto* clause does not limit the legislature's control of remedies or modes of procedure if they do not affect matters of substance; an amendment that affects only procedural matters and not substantive rights will be applied retroactively as well as prospectively. *Id.* at 1011. Hence, a change to the rules of evidence will not be deemed to have made a conviction easier to obtain unless it effected a substantive change in the evidence needed to convict for the particular crime in question. *Id.*

¶ 59     For instance, in *Kotecki*, this court found no *ex post facto* violation where the trial court applied a statutory amendment that relaxed the requirements for the admission of blood-test results in DUI prosecutions. *Id.* at 1010 (comparing 625 ILCS 5/11-501.4 (West 1994) with 625 ILCS 5/11-501.4 (West 1992)). We noted that the amendment "did not alter the law so as to require less proof, in amount or degree, to convict." *Id.* at 1013. Likewise, this court in *People v. Edwards*, 224 Ill. App. 3d 1017, 1024 (1992), found no constitutional violation where the trial court applied a statutory amendment creating a hearsay exception allowing a child to testify to the content of his prior complaint of sexual abuse. The prior statute allowed the child to testify to the fact of the complaint but not to its content. *Id.* (comparing Ill. Rev. Stat. 1989, ch. 38, ¶ 115-10, with Ill. Rev. Stat. 1987, ch. 38, ¶ 115-10). We determined that the amendment concerned trial procedures rather than substantive matters, and so there was no constitutional violation. *Id.*

¶ 60     Here, as with the amendments at issue in *Kotecki* and *Edwards*, the recent amendment to Rule 613(c) affects the admissibility of evidence and does not alter the quantum of proof required for a particular offense. Consequently, applying the amendment on appeal in this case does not infringe the protections against *ex post facto* laws.

¶ 61     As amended, Rule 613(c) provides that "a prior statement that is consistent with the declarant-witness's testimony" is admissible for rehabilitative purposes alone unless substantive admission is permitted "under evidence rules." Ill. R. Evid. 613(c) (eff. Sept. 17, 2019). According to the committee that drafted them, the Illinois Rules of Evidence codify "the current law of evidence in Illinois whenever the Illinois Supreme Court or the Illinois Appellate Court had clearly spoken on a principle of evidentiary law within the last 50 or so years." Ill. R. Evid. Committee Commentary (adopted Sept. 27, 2010). The recent amendment to Rule 613(c) reflects the historical approach of Illinois courts to the admission of out-of-court statements by a witness that are consistent with that witness's testimony.

¶ 62     In its 1925 decision in *Lyon v. Oliver*, 316 Ill. 292, 303 (1925), the supreme court declared:

> "As a general rule, proof of statements made by a witness out of court harmonizing with his theory is inadmissible, but where it is charged that his story is a recent fabrication or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible."

¶ 63     Nearly 60 years later, in *People v. Emerson*, 97 Ill. 2d 487, 500-01 (1983), the supreme court commented that its "cases have consistently held that evidence of statements made prior to trial for the purpose of corroborating testimony at trial is inadmissible"; rather, "prior consistent statements may be used only to rebut an inference of recent fabrication." The court quoted with approval the formulation in *Lyon*. *Id.* at 501 (quoting *Lyon*, 316 Ill. at 303).

¶ 64     Over 20 years later, in 2005, the court was still adhering to the rule as stated in *Lyon*:

"Generally, statements made prior to trial for the purpose of corroborating trial testimony are inadmissible. [Citation.] An exception to this rule applies when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose. [Citation.]" *People v. Cuadrado*, 214 Ill. 2d 79, 90 (2005).

¶ 65    All the while that the supreme court was applying the foregoing rule on out-of-court statements that are consistent with the witness's testimony, the court was also recognizing evidence rules applying generally to the admission of out-of-court statements. If those rules provided a basis, independent of the *Lyon* rule, for admission of an out-of-court statement, then it was irrelevant whether that statement happened to be consistent with the witness's testimony, and the statement was admissible for substantive purposes if the independent source so authorized. An example of this approach is *People v. Robinson*, 73 Ill. 2d 192 (1978), in which the defendant appealed the substantive admission of a rape victim's out-of-court statements that were consistent with her testimony that the defendant sexually assaulted her. In discussing the admissibility of the statements, the supreme court did not invoke the rule from *Lyon*. Instead, the court made admissibility simply a matter of whether the statements qualified under hearsay exceptions. The State relied on the hearsay exceptions for spontaneous declarations and corroborative complaints, but the court held that the statements at issue met neither exception. *Id.* at 199-200.

¶ 66    In *People v. Pointer*, 93 Ill. App. 3d 1064, 1067 (1981), the First District Appellate Court noted "several exceptions to the rule that excludes testimony of prior consistent out-of-court statements." The court listed the exceptions:

"Such evidence would be admitted to rebut an allegation of recent fabrication or a charge that the witness is motivated to testify falsely. [Citations.] In rape cases testimony will be permitted only as to the fact that the complainant alleged she was raped but not as to the details. [Citations.] Special rules apply to testimony concerning prior consistent out-of-court identifications. A witness will be allowed to testify that on a prior occasion either that witness or someone else present in court made an out-of-court identification of the defendant. [Citations.]" *Id.*

¶ 67    The court in *Pointer* accepted the State's suggestion that an exception should also be made for excited utterances. The court provided two reasons for adding the exception. The first was that an excited utterance has "additional reliability" because of the circumstances under which it is made "and is therefore not merely corroborative of the complainant's trial testimony." *Id.* at 1069. The second was that excited utterances "have been accepted as part of the law of evidence," and "[t]o exclude those excited utterances which fall within the no bolstering or corroborating rule would significantly diminish that acceptance for no apparent reason." *Id.*

¶ 68    In *People v. Beals*, 162 Ill. 2d 497, 507 (1994), the supreme court recognized "[t]he general rule *** that a witness may not testify regarding an out-of-court statement made by the witness or a third person which corroborates the witness' or third person's testimony at trial." The court held, however, that the rule did not apply to statements of identification, as their substantive admissibility was authorized by statute. *Id.* at 507-08 (citing Ill. Rev. Stat. 1987, ch. 38, ¶ 115-12 (now codified at 725 ILCS 5/115-12 (West 2018))).

¶ 69    The *Beals* court was concerned only with statements of identification and did not acknowledge any other exceptions to the general bar on prior consistent statements. *Beals*'s

- 14 -

logic, however, would appear to apply to any out-of-court statement that is independently admissible as substantive evidence.

¶ 70    In *People v. Stull*, 2014 IL App (4th) 120704, ¶ 100, the Fourth District Appellate Court suggested that, "[w]hen *** a prior statement is offered at trial as *substantive* evidence under an exception to the hearsay rule, the mere fact that the statement is consistent with the declarant's trial testimony does not render that prior statement no longer admissible." (Emphasis in original.)

¶ 71    In *Stull*, the victim gave out-of-court statements that were consistent with her trial testimony. The appellate court nonetheless affirmed the substantive admission of the statements because they met the criteria of section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2012)), a statutory exception to the hearsay bar. *Stull*, 2014 IL App (4th) 120704, ¶¶ 100-01.

¶ 72    *Stull* did not cite Rule 613, presumably because subparagraph (c) was not yet added. However, in *People v. Applewhite*, 2016 IL App (4th) 140558, ¶¶ 59-66, the court did cite subparagraph (c) but nonetheless followed the reasoning in *Stull* to affirm the admission of prior consistent statements pursuant to section 115-10. The court rejected the defendant's contention that admission of the statements under section 115-10 violated the bar on prior consistent statements. The court reasoned that, "by its very nature, section 115-10 *** constitutes an exception to that rule." *Id.* ¶ 63. "Accordingly, in the context of a section 115-10 hearing, the rule proscribing the admission of a witness's prior consistent statements has no application whatsoever." *Id.* ¶ 66.

¶ 73    The recent amendment to subparagraph (c) codifies the principle, tacit in *Robinson* and *Beals* but overt in *Pointer*, *Stull*, and *Applewhite*, that a prior consistent statement is not limited to rehabilitative purposes if its substantive admission is independently authorized. The principle rests on the recognition that a witness's out-of-court statement might have indicia of reliability apart from its mere consistency with the witness's testimony and that such indicia may warrant substantive admission of the statement.

¶ 74    The amendment provides for the substantive admission of a prior consistent statement where authorized by "evidence rules." Ill. R. Evid. 613(c) (eff. Sept. 17, 2019). "Evidence rules" include the Illinois Rules of Evidence as well as statutory provisions on evidence. See Ill. R. Evid. Committee Commentary (adopted Sept. 27, 2010) ("Numerous existing statutes, the validity of which are not affected by promulgation of the Illinois Rules of Evidence, *** relate in one form or another to the law of evidence."); Ill. R. Evid. 101 (eff. Jan. 6, 2015) ("A statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court.").

¶ 75    On appeal, the State relies on Rule 803 as a basis for the substantive admission of Davis's answer to Conklin's question. Rule 803 sets forth hearsay exceptions that apply regardless of whether the declarant is available to testify. See Ill. R. Evid. 803 (eff. Sept. 28, 2018). The State, as it did below, relies on Rule 803's exceptions for excited utterances and statements of then-existing mental, emotional, or physical condition.

¶ 76    We begin with the hearsay exception for excited utterances. Subsection (2) of Rule 803 allows the admission of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Sept. 28, 2018). To be admissible as an excited utterance, the statement must relate to an occurrence sufficiently startling to produce a spontaneous and unreflecting statement,

and there must be an absence of time for the declarant to fabricate the statement. *People v. Lerma*, 2016 IL 118496, ¶ 5 n.1.

¶ 77 The trial court found that Davis's answer to Conklin qualified as an excited utterance, but the court nonetheless excluded the statement because it was "more prejudicial than probative." On appeal, defendant takes a parallel stance, conceding that Davis's answer was an excited utterance but insisting that its potential for prejudice made it inadmissible.

¶ 78 The trial court's ruling on the admissibility of evidence will not be disturbed unless the court abused its discretion. *People v. Clark*, 2018 IL App (2d) 150608, ¶ 26. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 79 Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) states:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 80 The trial court deemed Davis's answer "more prejudicial than probative" specifically because the question-and-answer was "too pointed," it "resolve[d] all the factual issues" in the case, and it was "cumulative." The phrase "too pointed" appears to insinuate the possibility that Davis's answer to Conklin was fabricated. Thus, it seems that the trial court believed that Davis's answer met the basic requirements for an excited utterance but had diminished probative value because of the risk of fabrication.

¶ 81 In our view, the trial court did not make a fair appraisal of the circumstances surrounding Davis's answer. "Several factors have been used to determine whether the declarant's statement was in fact spontaneous, excited, and unreflecting." *People v. House*, 141 Ill. 2d 323, 381-82 (1990). "Time is one factor, albeit an elusive one, whose significance will vary with the facts of each case." *Id.* at 382. "Other factors to be considered include the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest." *Id.* "No one factor is determinative since each case must rest on its own facts; and the statement is judged based upon an examination of the totality of the circumstances surrounding the event." *Georgakapoulos*, 303 Ill. App. 3d at 1012.

¶ 82 At oral argument, the State was asked how Davis's statement could possibly have been spontaneous and unreflecting when it was made in reply to a question. Subsequent to the argument, the State brought to our attention *Georgakapoulos*, in which the First District Appellate Court, surveying the case law, concluded that a statement's being in response to one question, or even two, "does not automatically negate the statement's spontaneity, but instead is merely a factor to be considered in determining its reliability." *Id.* at 1014 (collecting cases).

¶ 83 Here, the trial court, having reviewed the video, found that the bite was a startling event such that Davis's immediate exclamation, "Ow!," qualified as an excited utterance. Conklin immediately followed with his question, and Davis answered in the same agitated tone as her prior exclamation; she was evidently still angry, frustrated, and/or in pain. We hold, based on the totality of the circumstances, that Davis lacked the opportunity to fabricate her answer to Conklin, despite what the trial court seemed to imply.

¶ 84     The trial court's remark that the video of Davis's answer would "resolve all the factual issues" seemed to make the same point as its comment that the video would be "cumulative." The trial court erred here as well. "Evidence is considered cumulative when it adds nothing to what was already before the [trier of fact]." *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009). Evidence can be corroborative and yet not cumulative. *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 81. Our analysis is admittedly tentative because we do not know what evidence the State intends to present at trial in addition to the video or what theory defendant intends to present. We can safely say, however, that the video would not necessarily be cumulative even if Davis testifies to the bite, her exclamation, Conklin's question, and her answer. The video obviously would have potential use in rebutting the defense theory that defendant did not bite Davis or that the bite neither caused bodily harm nor constituted insulting or provoking contact.

¶ 85     Since we hold that Davis's answer to Conklin was admissible as an excited utterance, we do not reach the State's alternative argument that her answer was admissible as a statement of her then-existing mental, emotional, or physical condition.

¶ 86     For these reasons, we reverse the trial court's judgment granting in part defendant's motion *in limine* and excluding the portion of the video in which Conklin asks Davis if defendant bit her and Davis answers, "Yes!"

¶ 87                                      III. CONCLUSION

¶ 88     In sum, we reverse the trial court's judgments dismissing count II of the indictment and granting in part defendant's motion *in limine* regarding the video. We remand this cause for further proceedings.

¶ 89     Reversed and remanded.