2021 IL App (2d) 190187
No. 2-19-0187
Opinion filed March 17, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-246 |
| SETH A. DRYER, | ) ) ) | Honorable C. Robert Tobin III |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial, defendant, Seth Dryer, was convicted of two counts of sexual exploitation

of a child (720 ILCS 5/11-9.1(a-5) (West 2014)) and seven counts of child pornography[1] (720

_____

    [1] In the proceedings below, the parties and the trial court were under the mistaken belief

that defendant's conduct should be classified as "aggravated" child pornography. However the

"aggravated child pornography" statute, found at 720 ILCS 5/11-20.1B, was repealed on January

1, 2013, by Pub. Act 97-995 (eff. Jan. 1, 2013). Therefore, we abstain from using the word

"aggravated" when discussing these counts.

ILCS 5/11-20.1(a)(1)(i), (a)(1)(iii), (a)(1)(iv), (a)(3), (a)(4) (West 2014)).[2] On appeal, defendant makes two arguments. First, defendant argues that his statutory speedy trial right (see 720 ILCS 725 ILCS 5/103-5(a) (West 2014)) was violated regarding the child pornography charges. Second, defendant argues that he was denied effective assistance of counsel when his trial counsel failed to file a motion to dismiss the child pornography charges on speedy trial grounds. We affirm.

¶ 2                                I. BACKGROUND

¶ 3      Between July 7, 2015, and July 9, 2015, defendant—who lived in Pasadena, Texas, at the time—was involved in a series of interactions through the Internet, via a gaming system, with two minors, C.H. and W.M., who lived in Boone County. Consequently, on October 21, 2015, defendant was arrested and charged by complaint with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)), a Class X felony, and two counts of sexual exploitation of a child (720 ILCS 5/11-9.1(a-5) (West 2014)), a Class 4 felony.

¶ 4      On November 13, 2015, a Boone County grand jury returned an indictment charging defendant with a total of 13 separate counts. Counts I and II alleged that defendant committed the offense of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)).[3]

---

[2] Throughout the record and on appeal, the parties and the trial court incorrectly cite sections 5/11-20.1(a)(3)(i) and 5/11-20.1(a)(4)(i) for several of these charges. However, sections 5/11-20.1(a)(3)(i) and 5/11-20.1(a)(4)(i) do not exist under the Criminal Code of 2012. We provide the correct statutory citations for the offenses with which defendant was charged.

[3] As defendant states in his brief, counts I and II seemed to be based on a theory of accountability, as defendant and the minor victims were in different states when the alleged crimes occurred.

Counts III and IV alleged that defendant committed the offense of sexual exploitation of a child (720 ILCS 5/11-9.1(a-5) (West 2014)). Those two counts provided that defendant knowingly persuaded C.H. and W.M. to "remove [their] clothing for the purpose of the sexual arousal of [defendant]."

¶ 5     Counts V through XII all alleged that defendant committed the offense of indecent solicitation of a child (720 ILCS 5/11-6(a), (a-5) (West 2014)). Specifically, counts V and VI alleged that defendant "knowingly solicited C.H. *** to perform an act of sexual penetration" involving his penis in W.M.'s mouth and anus. Counts VII and VIII alleged that defendant, "with the intent that the offense of predatory criminal sexual assault of a child be committed, knowingly discussed by means of the Internet," acts of sexual penetration with C.H. and W.M. Counts IX and X alleged that defendant knowingly solicited C.H. to perform an act of sexual penetration "involving a screwdriver and C.H.'s anus." Counts XI and XII alleged that defendant knowingly solicited C.H. to perform acts of sexual penetration "involving a pen and C.H.'s anus."

¶ 6     Finally, count XIII of the indictment alleged that defendant committed the offense of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2014)) by committing an act of sexual conduct with C.H., "involving the penis of C.H. and the hand of W.M."

¶ 7     Defendant reportedly fought extradition before being taken into custody in Boone County on December 13, 2015. The case was repeatedly continued while the parties negotiated and litigated pretrial motions. On August 4, 2017, nearly two years after defendant was taken into custody, the State filed new charges against defendant in a superseding indictment. The first 13 counts in the superseding indictment were identical to those in the original indictment. However, the superseding indictment also contained seven new counts of child pornography (720 ILCS 5/11-

20.1(a)(1)(i), (a)(1)(iii), (a)(1)(iv), (a)(3), (a)(4) (West 2014))[4] resulting from the same incidents as described in the original indictment.

¶ 8    Specifically, counts XIV through XX of the superseding indictment alleged that defendant "produced a film or other similar visual portrayal" of C.H. and W.M. engaged in various acts of "sexual penetration," "masturbation," and acts of "lewd fondling, touching, or caressing." The superseding indictment also indicated that defendant solicited or coerced C.H. and W.M. to appear in the visual portrayal.

¶ 9    Defense counsel agreed to more continuances until a jury trial was scheduled for November 5, 2018. On October 31, 2018, the State announced that it would be dismissing counts I, II, and V through XIII.

¶ 10    The evidence adduced at trial showed that, beginning in 2014 or 2015, C.H. began playing video games via his Xbox 360 gaming console with an individual who identified himself through the gamertag identification, "My Name is K1ll."[5] Investigators later traced this gamertag to an Xbox 360 console belonging to defendant, who eventually admitted to using the gamertag. Aside from playing online games with C.H., defendant would also send C.H. in-game currency and engage with C.H. in video chats using a camera that was connected to their consoles. However, defendant would block his camera during these chats so that C.H. was unable to see him. C.H. and defendant spoke daily.

---

[4] As noted earlier, we omit the incorrect citations appearing in the record and cite the correct statutes that defendant was charged with violating.

[5] The trial transcripts contained in the record indicate that this gamertag was also referred to as "Kill" or "My Name is Kill."

¶ 11    On the morning of July 9, 2015, defendant and C.H. were playing a video game together before defendant convinced C.H. to begin masturbating in view of his Xbox camera. Afterwards, defendant asked C.H. to invite a friend to his house, so C.H. called W.M., who visited shortly thereafter. Defendant convinced the two minors to engage in oral and anal sex with each other, while defendant watched over the Xbox's camera. Defendant advised the minors on how to position themselves so that his view would not be obstructed. However, unbeknownst to C.H. and W.M., their activities were being recorded by a nanny cam that C.H.'s mother had placed in his bedroom.

¶ 12    Later that morning, while C.H. was sleeping, his mother reviewed the nanny cam footage. Upon seeing C.H. and W.M. begin to engage in sexual activities with one another, she brought the footage to local police. The police arrived at C.H.'s residence later in the day, while C.H. was engaged in another video chat with defendant. When C.H. told defendant that there was an unmarked vehicle outside of his house, defendant immediately ended the chat and blocked C.H. from contacting him again.

¶ 13    At the conclusion of the trial, a jury found defendant guilty of all counts. After denying defendant's motion for a new trial, the court sentenced defendant to an aggregate total of 52 years' incarceration. Defendant timely appeals.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, defendant argues that (1) he was denied his right to a speedy trial regarding the child pornography charges and (2) he was denied effective assistance of counsel when his trial counsel failed to move to dismiss the child pornography charges on speedy trial grounds. Because we find that defendant's right to a speedy trial was not violated, we need address only his first argument.

¶ 16    Pursuant to the speedy trial rule, "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2014). This 120-day speedy trial period is tolled whenever the defendant causes a period of delay or otherwise agrees to a delay. *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006). Where a defendant is not tried within this statutory period, he or she is entitled to release from custody and dismissal of the pending charges. *Id.*

¶ 17    However, a speedy trial analysis "becomes more complicated when [a] defendant is charged with multiple, but factually related, offenses at different times." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). When a speedy trial analysis therefore becomes intertwined with the principles of compulsory joinder, delays that may be attributed to a defendant in connection with original charges are not always attributable to the defendant on subsequently filed charges. *Woodrum*, 223 Ill. 2d at 299.

¶ 18    To determine whether delays attributed to a defendant with respect to original charges should remain attributable to that defendant for subsequent charges, courts have utilized the *Williams* rule, which provides:

" 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional

charges were not before the court when those continuances were obtained.' " *People v. Phipps*, 238 Ill. 2d 54, 66 (2010) (quoting *Williams*, 94 Ill. App. 3d at 248-49).

¶ 19    In subsequent decisions, our supreme court has found that the *Williams* rule should not be utilized when "the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges." (Internal quotation marks omitted.) *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 30. The purpose of this caveat is to preserve the *Williams* rule's intent—to prevent trials by ambush. *Id.* Therefore, where the original charges provide a defendant with sufficient notice of subsequently filed charges, the subsequent charges are not "new and additional" for purposes of a speedy trial analysis, meaning that any delays attributed to the defendant for the original charges may also be attributed to that defendant for the later charges. *Id.*

¶ 20    In determining whether subsequent charges are "new and additional" for speedy trial purposes, "[t]he focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges." (Internal quotation marks omitted.) *Id.* "[T]he issue *** is not whether defendant had adequate notice of his [or her] *** charges prior to trial." *Id.* ¶ 47. A defendant can be presumed to have received sufficient notice of subsequent charges when the later charges allege "the same conduct" as the original charging instrument. *Phipps*, 238 Ill. 2d at 68. Such a situation is evident where the original and subsequent charges contain the same essential elements and penalties as one another. *Id.* However, variances in elements or penalties between charging instruments' original and subsequent charges do not automatically render the latter as "new and additional" charges. *Moffett*, 2019 IL App (2d) 180964, ¶ 41; *People v. Staake*, 2017 IL 121755, ¶ 44.

¶ 21    For example, in *Moffett*, the defendant was originally charged by complaint with aggravated battery for allegedly causing bodily harm to a correctional officer by biting the officer's fingers. 2019 IL App (2d) 180964, ¶ 5. Over one month later, the State filed an indictment that charged the defendant with two counts resulting from the same incident. *Id.* ¶ 9. Although the first count of the indictment was identical to the aggravated battery charge from the complaint, the second count of the indictment differed by alleging that defendant's contact with the officer was "of an insulting or provoking nature." (Internal quotation marks omitted.) *Id.* After several months had passed, the defendant sought to dismiss the second count of the indictment, arguing that she had not been tried on that charge within the statutory 120-day period. *Id.* ¶ 12. According to the defendant, because that count was a "new and additional" charge, any delays in the speedy trial period attributed to her on count I of the complaint could not be attributed to her on count II of the indictment. *Id.*

¶ 22    After analyzing whether "the original charging instrument gave the defendant sufficient notice of the subsequent charges" (internal quotation marks omitted), this court determined that count II of the indictment was not a "new and additional" charge, because both charges were based on the same conduct. *Id.* ¶¶ 43, 50. In reaching this conclusion, we noted that "not all variances in the elements between original and subsequent charges will render the latter new and additional charges." *Id.* ¶ 41. Therefore, despite the fact that count II added an element not described in the original aggravated battery charge—contact of an insulting or provoking nature—this element was nonetheless inherent in the original charge because "imagination strains to conjure a scenario in which the deliberate infliction of bodily harm is not insulting or provoking." *Id.* ¶ 43. For this reason, we concluded that the defendant was provided with sufficient notice of count II. *Id.* In

reaching this decision, we also noted that both charges had the same classification and penalty. *Id.* ¶ 44.

¶ 23    Here, in resolving defendant's arguments, we must determine whether the child pornography charges that make up counts XIV through XX were "new and additional" charges subject to compulsory joinder. *Phipps*, 238 Ill. 2d at 67. However, because the parties do not seem to dispute that the charges in both indictments were subject to compulsory joinder, we are left to determine whether counts XIV through XX were "new and additional charges" pursuant to the *Williams* rule. We review this legal question *de novo*. *Id.*

¶ 24    A comparison of the original and the superseding indictments shows that both charging instruments were based on the same conduct. The charges outlined in the original indictment specified that defendant "knowingly solicited" C.H. and W.M. to remove their clothes and perform sexual acts "for the purpose of the sexual arousal of *** defendant." The original indictment also specified that this solicitation took place "by means of the Internet." From this language, it is clear that defendant was able to watch C.H. and W.M. in order for him to be "sexually aroused" by their actions. Taken in conjunction with the allegations that defendant used the Internet to solicit the minors, it is unquestionable that the State sought to prove that defendant watched C.H. and W.M. remotely.

¶ 25    The superseding indictment—which contained all the original charges set forth in the original indictment—reiterated this same conduct.[6] While the child pornography charges in counts

---

[6] As the State points out, defendant has conceded in his brief that his apparent "use of the Xbox gaming system to communicate by video chat with C.H. and W.M." formed the basis of the child pornography charges.

XIV through XX of the superseding indictment additionally alleged that defendant "produced a film or other similar visual portrayal" in which C.H. and W.M. were coerced into appearing, as we have already discussed, these facts were already implicit in the original indictment. Therefore, because these later counts naturally followed from the conduct alleged in the original indictment, defendant was inherently on notice of the child pornography charges. See *Moffett*, 2019 IL App (2d) 180964, ¶ 43.[7]

¶ 26    While we therefore find that the original indictment's references to the Internet and defendant's sexual gratification create an unavoidable inference that defendant produced a visual medium of the minor's sexual activities, defendant disputes this conclusion. According to defendant, because only 4 of the original 13 charges mention the Internet communications involved, we should not consider the references to the Internet communications in determining whether defendant was sufficiently placed on notice of the child pornography charges.

¶ 27    However, defendant has provided no authority suggesting that our consideration of the charging instruments must be constrained in such a manner. Therefore, defendant's argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 32. Forfeiture aside, our research on the subject suggests that no such authority exists. Instead, pertinent case law provides only that we must consider "whether the

_____

[7] We also note that, after reading the original indictment, defendant should have known that the State would need to show that defendant communicated with the minors over a visual medium in order to prove the allegations contained in the original charges. Because this visual medium provided the impetus for the child pornography charges, defendant definitively had sufficient notice of those later charges.

*original indictment* gave defendant adequate notice to prepare his defense to the subsequent charge." (Emphasis added.) *Phipps*, 238 Ill. 2d at 69. Because this language does not mention the individual charges making up an original indictment, a plain reading of the language suggests that an original indictment should be considered holistically. Therefore, it is irrelevant whether every single charge in the original indictment provided its own, independent notice of the superseding child pornography charges.

¶ 28     We also note that, if defendant's arguments rang true, the speedy trial analysis—as laid out by *Williams*, *Woodrum*, *Phipps*, and their progeny—would be thrown into disarray. By suggesting that the *Williams* rule applies unless every individual charge in an original indictment provides independent notice of superseding charges, defendant effectively suggests that *all* charges in an original indictment must completely mirror one another. However, this would be impossible in cases where an original indictment charged a defendant with separate offenses, because each offense would necessarily contain differing information to detail each offense's distinct elements. See *People v. Grieco*, 44 Ill. 2d 407, 409 (1970) (holding that every charge in an indictment must specifically state the elements of their respective offense). Therefore, under defendant's proposed framework, the *Williams* rule would always apply in any case where an original charging instrument contained separate, distinct offenses, regardless of whether any single portion of the original indictment succeeded in providing notice of superseding charges. For these reasons, defendant's argument necessarily fails.

¶ 29     Defendant also suggests that our decision in *People v. Boyd*, 363 Ill. App. 3d 1027 (2006), warrants a different result. However, defendant's argument is misguided. In *Boyd*, the defendant was originally charged with armed robbery, aggravated battery, and aggravated battery with a firearm. *Id.* at 1034. Some 116 days after the original charges were filed, the State additionally

charged defendant with several home invasion charges. *Id.* Consequently, we were tasked with determining whether defendant's trial counsel was ineffective for failing to invoke defendant's speedy trial right regarding the home invasion charges. *Id.* at 1033-34. However, in deciding this issue, we noted that the "parties correctly [agreed] that all of the charges [were] subject to compulsory joinder *** and that the home invasion counts [constituted] 'new and additional charges.' " *Id.* at 1036. Because these facts were not in dispute, there was no need to analyze the language of any of the charging instruments to determine whether the home invasion charges were "new and additional." *Id.* In fact, while deciding *Boyd*, we never cited the language of either charging instrument. Instead, we focused on whether the trial delays were attributable to the State or to the defendant. *Id.* at 1038.

¶ 30    Here, the parties do not dispute to whom the various delays were attributable; we are therefore concerned only with whether the language of the indictments rendered the later charges "new and additional." Because *Boyd* provides no meaningful analysis regarding that issue, the case does not apply here.

¶ 31    Defendant also argues that the disparate penalties for the original and the superseding charges renders the latter "new and additional" for speedy trial purposes. We disagree. As the State points out (and as defendant acknowledges), counts I and II of the original indictment already subjected defendant to convictions of two Class X felonies. If defendant were convicted of these counts, he would have been subject to a natural life sentence, similar to the sentence he ultimately received. 720 ILCS 5/11-1.40(b)(1.2) (West 2014). Therefore, defendant's contentions are factually incorrect.

¶ 32    Nonetheless, defendant attempts to negate this conclusion by arguing "that the predatory criminal sexual assault charges might have been much more difficult for the State to prove."

However, defendant has provided no case law suggesting that such a speculation has any relevance to our analysis. Because defendant did not cite any supporting authority for this claim, it is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Rogers*, 2016 IL App (2d) 150712, ¶ 32.

¶ 33    Defendant also argues that the variances between the elements of the original and the superseding indictment's charges suggest that the child pornography charges were "new and additional." Again, we disagree. As we noted earlier, variances in elements between original and subsequent charging instruments is a factor to consider when determining the applicability of the *Williams* rule, but, taken alone, this factor is not determinative of the issue. *Moffett*, 2019 IL App (2d) 180964, ¶ 41. Instead, the main inquiry is whether the original charges provided the defendant with notice of the impending charges. *Id.* ¶ 30. Again, the child pornography charges here naturally followed from the conduct described in the original indictment. Therefore, any variation in the elements in the charging instruments' charges is insufficient to overcome the fact that defendant had notice of the child pornography charges. See *id.* ¶ 43.

¶ 34    While we therefore conclude this analysis based solely on the charging instruments and the natural inferences those instruments provide, as a final observation, we are compelled to note that a fair reading of the record suggests that defendant improperly seeks to use the speedy trial statute as a sword to dismiss the serious charges levied against him rather than as a shield to prevent trial by ambush. *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 14.

¶ 35    On April 7, 2017, the State first told defendant that a superseding indictment was forthcoming. On that date, the State asked the court to delay a hearing on defendant's motion to dismiss, for "general purposes of negotiation." On April 21, 2017, the State tendered an unfiled copy of the subsequent charges to defense counsel. At that time, the State also indicated that it would "follow up with a written offer based on the new counts" and once again asked to postpone

defendant's motion to dismiss so that the parties could conduct a Rule 402 conference (see Ill. S. Ct. R. 402 (eff. July 1, 2012)). By June 5, 2017, the parties reportedly held the conference. Although the record is unclear as to what exactly was discussed, it seems as if defendant refused to agree to a plea deal, because on August 4, 2017, the State filed its additional charges. Now, after his decision to forgo a plea deal in lieu of a trial ultimately proved to be unwise, defendant seeks to use the speedy trial statute offensively, and not for its intended purpose—to prevent trial by ambush.

¶ 36    Because the original indictment provided defendant with sufficient notice of the supplementary charges included in the superseding indictment, the child pornography charges were not "new and additional" for purposes of a speedy trial analysis. Therefore, defendant's speedy trial right was not violated regarding the child pornography charges. Furthermore, because no speedy trial violation occurred, defendant's ineffective-assistance claims, which are based solely on the purported speedy trial violation, necessarily fail.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 39    Affirmed.

**No. 2-19-0187**

| | |
|---|---|
| **Cite as:** | *People v. Dryer*, 2021 IL App (2d) 190187 |
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 15-CF-246; the Hon. C. Robert Tobin III, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Elena B. Penick, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |