| NOTICE |
| --- |
| This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1). |

2024 IL App (4th) 230693-U

NO. 4-23-0693

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 14, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
| --- | --- | --- |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| RAFAEL RUIZ, | ) | No. 21CF2391 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Robert Randall Wilt, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court. Justices Steigmann and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court reversed, finding the State had demonstrated the trial court's dismissal of count II of the superseding indictment and denial of the State's motion *in limine* constituted *prima facie* reversible error.

¶ 2   On July 12, 2023, the trial court granted the motion of defendant, Rafael Ruiz, to dismiss count II of the superseding indictment alleging criminal drug conspiracy and denied the State's motion to reconsider its fourth motion *in limine*. The State filed a certificate of impairment. On appeal, the State argues the court (1) erred when granting defendant's motion to dismiss and (2) abused its discretion when denying the State's fourth motion *in limine*. We reverse.

¶ 3   I. BACKGROUND

¶ 4   On December 7, 2021, defendant was charged by criminal complaint with possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(C) (West

2020)) for knowingly delivering 400 grams or more but less than 900 grams of cocaine. According to a probable cause statement filed with the complaint, on December 6, 2021, a confidential informant (CI) made contact with defendant by phone to purchase cocaine. Defendant stated he would send his "nephew" to deliver the cocaine. Shortly thereafter, defendant and Christopher Ramirez arrived together in a black GMC Yukon at the CI's residence. Inside the residence, the CI agreed to purchase "a half a kilo" of cocaine for $15,500. Defendant and Ramirez left. That evening, defendant came back to the residence in the same Yukon he was driving earlier. Ramirez arrived at the same time but was driving a "small truck" and parked on the side of the road "just west" of the residence. Defendant entered the residence and told the CI his "nephew," referring to Ramirez, was outside in the small truck. At that time, the Winnebago County Narcotics Unit took defendant into custody. Ramirez was arrested outside simultaneously. Police recovered a loaded black Glock 43x handgun on the seat next to Ramirez. Next to the handgun was a brown purse containing $2400 in cash. In Ramirez's pocket, officers recovered a loaded magazine. Following a search of the Yukon, officers discovered a false compartment in the vehicle and recovered 524 grams of cocaine. Ramirez stated, "he was told by [defendant] to follow him to the address and that was it."

¶ 5    On December 29, 2021, defendant was charged by indictment, alleging he and Ramirez committed the offense of possession with intent to deliver a controlled substance, cocaine, on December 6, 2021. Count II of the indictment charged Ramirez with aggravated unlawful use of a weapon. Defendant was not charged with a weapons offense, but the relevance of Ramirez's charge will be discussed shortly.

¶ 6    On March 14, 2023, the State filed six motions *in limine*. In the fourth motion *in limine*, the State sought to introduce the handgun and cash found in Ramirez's truck as

admissible evidence to prove defendant's intent to deliver the cocaine and that defendant and Ramirez were working together to deliver the cocaine.

¶ 7        At the hearing on the State's motions *in limine*, the State argued defendant and Ramirez went to the residence in the same vehicle the first time and in separate vehicles the second time, but at the same time nonetheless. Defendant stated Ramirez had "it," referring to the cocaine, in "another truck," referencing Ramirez's truck parked outside. The State argued a drug expert would testify drug dealers are commonly armed and have large amounts of cash on hand.

¶ 8        The trial court denied the State's fourth motion *in limine*, stating the evidence of the "gun and the ammo" would "dirty [defendant] up too much." The court stated, "Either you've got the evidence to prove that [defendant] possessed the drugs and was involved in the sale of the drugs or not." The court noted the handgun evidence would be more relevant if defendant had possessed it as a way to protect the drugs. The court found the handgun's prejudicial value was too significant, as it would blame defendant for a handgun that Ramirez had possessed. The court also denied the motion as it pertained to the cash. The court then went on to explain:

> "Now, this is all dependent on these cases being tried separately. If they're joined together, which I am surprised they're not, but if they're joined together, that's a whole different ball game because then the evidence that comes in, there may have to be limiting instructions and so forth, but right now they're separated. So we can revisit this if the status of that changes."

¶ 9        On May 25, 2023, the State filed a motion for joinder of defendant's and Ramirez's cases.

¶ 10        On June 9, 2023, a superseding bill of indictment was filed with an additional count charging defendant with criminal drug conspiracy based on the events of December 6, 2021. The State alleged defendant agreed with Ramirez to deliver a controlled substance, and, in furtherance of that agreement, defendant had met with the prospective buyer. The superseding indictment alleged criminal drug conspiracy, but it referenced section 405(a) of the Illinois Controlled Substances Act 720 ILCS 570/405(a) (West 2022)—the statute for calculated criminal drug conspiracy that requires three or more individuals to partake in the conspiracy. The State's brief, on appeal, attributes this to a typographical error.

¶ 11        On June 12, 2023, the State filed a motion to reconsider the trial court's decision on its fourth motion *in limine*. After a hearing on the State's motion to reconsider, the trial court reserved ruling on the issue until it could be determined whether the criminal-drug-conspiracy charge from the superseding indictment had violated defendant's speedy trial rights.

¶ 12        On July 12, 2023, defendant filed a motion to dismiss the criminal-drug-conspiracy count from the superseding indictment. The State withdrew its motion for joinder.

¶ 13        At a hearing that same day, the trial court granted defendant's motion and denied the State's motion to reconsider its fourth motion *in limine*. The court found the criminal drug conspiracy was a new and additional charge. The court explained the new charge alleged two new elements that were not part of defendant's original indictment for possession with intent to deliver.

¶ 14        The State, in a footnote in its brief on appeal, notes all continuances from December 7, 2021, through July 12, 2023, were either on defendant's motion or agreed to by defendant, thereby tolling the 120-day speedy trial period. Defendant, who had been in custody throughout this period, was released from custody pending the result of the State's appeal.

¶ 15       The State filed a certificate of impairment, and this appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17       We begin by noting defendant, as the appellee, did not file a brief in this matter. In *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009), we explained a reviewing court may exercise three discretionary options in the absence of an appellee's brief:

> "(1) [a reviewing court] may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 18       The State, on appeal, argues the trial court (1) erred when granting defendant's motion to dismiss and (2) abused its discretion when denying the State's fourth motion *in limine*. We address each claim in turn.

¶ 19                                A. Motion to Dismiss

¶ 20       The State argues the trial court erred when it dismissed count II of the superseding indictment because the criminal-drug-conspiracy charge was not "new and additional" for purposes of compulsory joinder and therefore it did not violate defendant's statutory right to a speedy trial.

¶ 21                                1. *Applicable Law*

¶ 22       The speedy trial statute provides, in relevant part, that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days

- 5 -

from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2022). If a defendant is not tried within the 120-day speedy trial period, said defendant is entitled to be released from custody and to have the pending charges dismissed. *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006). The 120-day speedy trial period is tolled when a defendant causes or otherwise agrees to a delay. *Id.*

¶ 23    In *People v. Williams*, 204 Ill. 2d 191, 198 (2003), our supreme court stated:

"Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense. Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times. In such cases the speedy-trial guarantee is tempered by compulsory joinder principles."

¶ 24    Nevertheless, a delay attributable to a defendant on his original charges will not always be attributable to a defendant on subsequently filed charges. *Woodrum*, 223 Ill. 2d at 299. The "*Williams* rule" was developed for such circumstances:

" 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " *People v. Phipps*, 238 Ill. 2d 54, 66 (2010) (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)).

¶ 25        The purpose of the *Williams* rule was to prevent "trial by ambush," wherein the State might "lull [a] defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges." (Internal quotation marks omitted.) *Id.* at 67. The *Williams* rule was developed to prevent a defendant from being subsequently charged with a more serious offense that would leave a defendant with "a Hobson's choice between a trial without adequate preparation [or] further pretrial detention to prepare for trial." (Internal quotation marks omitted.) *Id.*

¶ 26        However, the *Williams* rule does not apply when the original charges provide a defendant with sufficient notice of a subsequently filed charge. *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 30. When "the original charges provide a defendant with sufficient notice of subsequently filed charges, the subsequent charges are not 'new and additional' for purposes of a speedy trial analysis, meaning that any delays attributed to the defendant for the original charges may also be attributed to that defendant for the later charges." *People v. Dryer*, 2021 IL App (2d) 190187, ¶ 20. A reviewing court evaluates whether a subsequent charge is "new and additional" by determining if the original charging instrument gave the defendant sufficient notice of the subsequent charge to adequately prepare for trial on that charge. *Id.* "A defendant can be presumed to have received sufficient notice of subsequent charges when the later charges allege 'the same conduct' as the original charging instrument." *Id.* This would be evident where the original and subsequent charging documents "contain the same essential elements and penalties as one another." *Id.* "However, variances in elements or penalties between charging instruments' original and subsequent charges do not automatically render the later as 'new and additional' charges." *Id.*

¶ 27        Therefore, we must compare the original and subsequent charges. *Phipps*, 238 Ill. 2d at 67. We review *de novo* whether the subsequently filed charge is considered "new and additional." *People v. Staake*, 2017 IL 121755, ¶ 37. Additionally, we review the trial court's dismissal pertaining to a defendant's indictment *de novo*. *People v. Johnson*, 335 Ill. App. 3d 805, 807 (2002).

¶ 28                                    2. *The Case at Bar*

¶ 29        There is no dispute that defendant's original and subsequent charges are subject to compulsory joinder. The only issue we must determine on review is whether defendant's subsequent charge for criminal drug conspiracy was a new and additional charge.

¶ 30        As noted above, the superseding indictment cites the calculated drug conspiracy section of the Illinois Controlled Substances Act, which involves three or more persons as part of the conspiracy. This court has previously held "the mere reference in a charging instrument to an incorrect chapter or section of a statute is regarded as a formal rather than a substantive defect." *People v. McBrien*, 144 Ill. App. 3d 489, 495 (1986). In the case of a conviction, a formal defect in the charging instrument would not warrant a reversal absent a defendant demonstrating prejudice by the erroneous citation. *Id.* The record in the instant case demonstrates the parties were under the impression defendant had been correctly charged with criminal drug conspiracy, not calculated drug conspiracy, and up until the State's mentioning of the erroneous citation in its brief on appeal, it appears no one was aware of the incorrectly cited section of the statute. Therefore, we will proceed with our analysis as if the superseding indictment correctly cited section 405.1(a) (720 ILCS 570/405.1(a) (West 2020)).

¶ 31        The original indictment, in count I, charged defendant and Ramirez with possession with intent to deliver a controlled substance, alleging that on December 6, 2021,

- 8 -

defendant knowingly possessed with the intent to deliver 400 grams or more but less than 900 grams of cocaine, a Class X felony. *Id.* § 401(a)(2)(C). Count II of the original indictment charged Ramirez with aggravated unlawful use of a weapon.

¶ 32 Count I of the superseding indictment remained the same as the original indictment. Count II charged defendant with criminal drug conspiracy, alleging that on December 6, 2021, defendant, with the intent to deliver the cocaine in violation of section 401(a)(2)(C) (*id.*), agreed with Ramirez to the commission of delivering a controlled substance, and in furtherance of that offense, defendant met with the prospective buyer, a Class X felony. *Id.* § 405.1(a). Count III of the superseding indictment charged Ramirez the same as count II of the original indictment.

¶ 33 Here, the subsequent charge in the superseding indictment incorporated defendant's original charge regarding his intent to deliver the cocaine but with two additional elements: (1) defendant had agreed with Ramirez to the commission of delivering the cocaine and (2) in furtherance of delivering the cocaine, defendant had met with the CI.

¶ 34 We find defendant was sufficiently on notice of the subsequent criminal-drug-conspiracy charge; therefore, it was not a new and additional charge subject to dismissal pursuant to the speedy trial statute. As explained above, defendant was presumed to have received sufficient notice of the subsequent criminal-drug-conspiracy charge when it alleged the same conduct from the original possession-with-intent-to-deliver charge. This is the case here, where the subsequent charge incorporated the original charge. Although the subsequent charge contains additional elements, which the trial court based its decision on when dismissing count II of the superseding indictment, this is not dispositive of whether the subsequent charge was new and additional for speedy trial purposes. The additional elements of the subsequent charge were

simply alleged facts of which defendant would have been well aware as forming part of the State's theory of the case regarding the intent element from his original possession-with-intent-to-deliver charge. Recall, the purpose of the *Williams* rule is to prevent the State from lulling a defendant into agreeing to continuances and then later springing upon him a more serious charge that would leave him either inadequately prepared for trial or remaining in pretrial custody to prepare for trial. Here, the subsequent charge had the same penalty as the original charge, which makes it no more serious, and it is further indicative that defendant received sufficient notice.

¶ 35    Because the State has demonstrated *prima facie* reversible error supported by the record, we reverse the trial court's dismissal of count II of defendant's superseding indictment.

¶ 36                                B. Motion *in Limine*

¶ 37    The State contends the trial court abused its discretion when it denied the State's fourth motion *in limine* to admit Ramirez's possession of a handgun and a large amount of cash. The State argues the evidence is probative of defendant's intent to deliver the cocaine and would have been admissible under the common-design rule and as circumstantial evidence establishing the existence of the criminal conspiracy.

¶ 38    We review the trial court's denial of the State's motion *in limine* for an abuse of discretion. *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 121. A trial court abuses its discretion when denying a motion *in limine* where the court's decision is arbitrary, exceeds the bounds of reason, or ignores or misapprehends the law. *Id.*

¶ 39    Generally, evidence is admissible if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011). For evidence to be relevant, it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence may be

excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 40        While the State argues for reasons, such as the common-design rule or as circumstantial, that the evidence of Ramirez's possession of a handgun and a large amount of cash is relevant and probative, this is not the issue. For instance, because we have already found the State demonstrated *prima facie* reversible error when the trial court dismissed the criminal-drug-conspiracy charge against defendant, the handgun and cash may be used as "circumstantial evidence to infer that two persons agreed to commit" the offense of criminal drug conspiracy. *People v. Ulloa*, 2015 IL App (1st) 131632, ¶ 16. Therefore, the issue is not the relevance of the handgun or the cash, but whether the court's decision when denying the State's ability to introduce such evidence was an abuse of discretion. The reasons the court gave for denying the State's motion *in limine* were distinct for each piece of evidence.

¶ 41        The trial court denied the State's ability to introduce the handgun because it would "dirty [defendant] up too much;" that is, the court had found the handgun was unfairly prejudicial, such that it substantially outweighed its probative value. The court denied the State's ability to introduce the large amount of cash for a less apparent reason, if for any reason at all.

¶ 42        Thus, our review as it pertains to the introduction of the $2400 in cash is relatively simple. The State has demonstrated *prima facie* reversible error supported by the record where the court's failure to provide any clear reason for excluding the cash was arbitrary.

¶ 43　　　　　The issue of the handgun, however, is not as simple. This court has previously explained the difficulty involved in reviewing a trial court's decision pertaining to a motion *in limine*:

> "[A] motion *in limine* is a powerful weapon used to obtain an evidentiary ruling before trial. The motion and offer of proof must identify, with particularity, what evidence the movant seeks to be excluded [or permitted]. Speculative offers of proof are not sufficient. The trial court has vast discretion in considering the motion and may decline to entertain the motion. The court must be cautious in making its ruling and should announce its ruling in a written order. The order must be clear and articulate its limitations." *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 31.

¶ 44　　　　　Here, the State had presented an informal offer of proof that a drug expert would testify that drug dealers are commonly armed. Ramirez, who possessed the handgun, stated he was told by defendant to follow him to the residence where the transaction would occur. This evidence, under the common-design rule, would permit the State to "prove the accused had the specific intent to promote or facilitate a crime." *People v. Phillips*, 2014 IL App (4th) 120695, ¶ 43 (quoting *People v. Houston*, 258 Ill. App. 3d 364, 369 (1994)). But this only goes to the relevance of the evidence. As a reviewing court, "[o]ur mere disagreement with the trial court's decision would not be enough to make the decision an abuse of discretion." *Hancock*, 2014 IL App (4th) 131069, ¶ 121. Rather, the trial court's determination that the handgun was unfairly prejudicial must be arbitrary, exceed the bounds of reason, or ignore or misapprehend the law.

¶ 45　　　　　We begin by noting that "all evidence is prejudicial in that it is intended to impact the fact finder's decision." *People v. Gordon*, 2017 IL App (3d) 140770, ¶ 25. The issue is

whether the evidence is *unfairly* prejudicial. "Weighing whether evidence is unfairly prejudicial requires an evaluation of the capacity of the evidence to lure the [fact finder] into declaring guilt on a ground different from proof specific to the offense charged, such as sympathy, hatred, contempt or horror." (Internal quotation marks omitted.) *People v. Brennan*, 2023 IL App (2d) 220190, ¶ 62; see *People v. Woodson*, 2023 IL App (1st) 191353, ¶ 101 ("Evidence is unfairly prejudicial when it casts a negative light on a defendant for reasons that have little to do with the case on trial.").

¶ 46　　　　We find the State has demonstrated *prima facie* reversible error supported by the record where the trial court abused its discretion when denying the State's fourth motion *in limine*. We note this finding was not easy to conclude. In this context, "*prima facie*" means "[a]t first sight; on first appearance but subject to further evidence or information" and "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." (Internal quotation marks omitted.) *Thomas*, 395 Ill. App. 3d at 577. Unquestionably, the handgun evidence would "dirty up" defendant. Nonetheless, on first appearance and from this record, the degree to which the trial court found the prejudice unfair was not sufficient to deny the State's motion. The handgun evidence, supported by Ramirez's statements and a drug expert explaining the significance of drug dealers being armed, would cast a negative light on defendant, but not for reasons having little to do with this case. Nor did the court articulate that the handgun evidence would lure a fact finder into finding defendant guilty for reasons of sympathy, hatred, contempt, or horror. As our supreme court explained, a trial court should be cautious when granting or denying a motion *in limine* and "must be certain that such action will not unduly restrict the opposing party's presentation of its case." *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 550 (1981).

¶ 47        Here, the State's case was significantly impaired. The State's case, as alleged, is predicated on how defendant and Ramirez interacted when arranging to sell cocaine on the first visit and defendant's and Ramirez's actions when they came to the CI's residence on the second visit. Ramirez went with defendant to meet with the CI, and Ramirez followed defendant, at his request, to deliver the cocaine to the CI's residence. Ramirez was outside the CI's residence at the time of defendant's arrest. A drug expert was offered to testify that drug dealers often carry large amounts of cash and are armed. This makes Ramirez's conduct and the circumstances surrounding Ramirez's arrest relevant, but not unfairly prejudicial.

¶ 48                        III. CONCLUSION

¶ 49        For the reasons stated, we reverse the trial court's judgment.

¶ 50        Reversed.